UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 22-cv-21939-BLOOM/Otazo-Reyes

LATOYLA YASHEEN COOPER-LEVY,
et al.,
Plaintiffs,

v.

CITY OF MIAMI,
Defendant.
_____/

## PARTIES' STIPULATION OF DISMISSAL

Plaintiffs, Latyola Cooper, Joseph Simmons, Phillip Sylverin, and Sherman Rivers and Defendant, the City of Miami, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, agree that this action be dismissed with prejudice as to all causes of action in the complaint against Defendant, the City of Miami, pursuant to the parties' attached settlement agreement. However, this Stipulation is conditioned on the Court entering an order retaining limited jurisdiction as described in the attached settlement agreement.

Dated: March 6, 2024

Respectfully submitted,

*Attorneys for Plaintiffs:*

/s/_____
Jeffrey M. Hearne, Fla. Bar No. 512060
jhearne@legalservicesmiami.org
Jocelyn Armand, Fla. Bar No.44264
jarmand@legalservicesmiami.org
LEGAL SERVICES OF GREATER MIAMI, INC.
4343 W Flagler Street, Suite 100

Miami, FL 33134
Tel. / Fax : (305) 438-2403

Stephen Schnably, *Pro Hac Vice* Admission
Professor of Law
schnably@law.miami.edu
University of Miami School of Law
1311 Miller Drive, Law Lib. G472
Coral Gable, FL 33146
Tel: (305) 284-4817
Cooperating Attorney, ACLU of Florida

Jodi Siegel, Fla. Bar No. 511617
Jodi.siegel@southernlegal.org
Chelsea Dunn, Fla. Bar No. 1013541
Chelsea.dunn@southernlegal.org
Daniel Marshall, Fla. Bar No. 617210
Dan.marshall@southernlegal.org
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Avenue
Gainesville, FL 32601
Tel: (352) 271-8890
Fax: (352) 271-8347

Benjamin Waxman, Fla. Bar No. 403237
bwaxman@royblack.com
Benjiwaxman@gmail.com
BLACK SREBNICK P.A.
201 S. Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: 305-371-6421
Fax: 305-358-2006
Cooperating Attorney, ACLU of Florida

Daniel Tilley, Fla. Bar No. 102882
dtilley@aclufl.org
ACLU FOUNDATION OF FLORIDA
4343 West Flagler St., Suite 400,
Miami, FL 33134
Tel: (786) 363-2714


LYDECKER LLP
*Counsel for Defendant City of Miami*
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone No.: (305) 416-3180

Facsimile No.: (305) 416-3190

By: /s/ *Forrest L. Andrews*
FORREST L. ANDREWS, ESQ.
Fla. Bar No. 17782
Email:  fla@lydecker.com
DEBBIE MAKEN, ESQ.
Fla. Bar No. 1017427
Email: dgm@lydecker.com
JOSHUA QUETGLAS, ESQ.
Fla. Bar No.: 1044525
Email: jquetglas@lydecker.com
ASHLEY MORRISON, ESQ.
Fla. Bar No. 112448
Email: amorrison@lydecker.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CV-21939-BLOOM/TORRES

LATOYLA YASHEEN COOPER-LEVY,
PHILLIP SYLVERIN, SHERMAN RIVERS,
*and* JOSEPH SIMMONS,

        *Plaintiffs,*

v.

CITY OF MIAMI,

        *Defendant.*
_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement") is entered into by Plaintiffs Latoyla Cooper-Levy, Phillip Sylverin, Sherman Rivers, and Joseph Simmons, through Next Friend Audrey Delricho, ("Plaintiffs") and Defendant the City of Miami ("the City"). Plaintiffs and Defendant are jointly referred to as the "Parties."

WHEREAS, this action was brought by Plaintiffs, four individuals who were experiencing homelessness in 2021;

WHEREAS, Plaintiffs' Complaint alleges that the City, when conducting cleanup operations, unreasonably seized their property without due process and thus violated the 4th Amendment and the 14th Amendment;

WHEREAS, the City disputes Plaintiffs' allegations and contends that it has complied with its legal obligations;

1

WHEREAS, the purpose of this Settlement is to reach a complete and final conclusion of the litigation between the parties; to resolve this matter without the time and expense of litigation and to resolve amicably, without any admission of liability whatsoever by the Defendant, all claims raised in this litigation.

The Parties mutually agree to the following terms:

1. The City agrees that it will amend its Administrative Policy APM-1-19 ("APM") regarding the Treatment of Homeless Persons' Property. The amended APM is attached as Exhibit A. The City will implement the amended APM on or before May 31, 2024. The City will notify Plaintiffs when the amended APM is officially adopted as an Administrative Policy and will provide Plaintiffs with a copy of the official amended APM.

2. The City agrees that it will provide training to all HEAT (Homeless Empowerment Assistance Team) members and other City employees who interact with Homeless individuals or Homeless Persons' Property (as defined by the APM). The training must cover all parts of the amended APM. The Training will occur on or before May 31, 2024. The City will notify Plaintiffs when it has completed the training and will provide the names of City employees who received the training.

3. The City agrees to provide the following reports to Plaintiffs. The first report before the City implements the amended APM will consist of the HEAT After Action reports from February, March, April, and May 2024 and Inventory Storage forms completed by the City during those months. The first report will be due on June 15, 2024. Once the City implements the amended APM, the City will provide quarterly reports to

2 



Plaintiffs for one year. The quarterly reports will include the following information from the respective quarterly period: (1) photographs of posted pre-clean up notices (required by amended APM Section IV. 4.); (2) how many "Notices of Removal" were attached to abandoned / contaminated property at a cleanup location (required by amended APM, Sections IV. 3.; VI. 3.; and VII. 3.); (3) how many items with "Notices of Removal" the City disposed of at a cleanup location; (4) how many "Notices of Collection" the City posted (required by amended APM, Sections II. 2.; VI 1. & 6.; VII. 2. & 7.) and (5) copies of all HEAT After Action reports. The first quarterly period will cover June, July, and August 2024 and the City's report will be due on September 15, 2024. The second quarterly period will cover September, October, and November 2024, and the City's report will be due on December 15, 2024. The third quarterly report will cover December 2024, and January and February 2025, and the City's report will be due on March 15, 2025. The final quarterly report will cover March, April, and May 2025 and the City's report will be due on June 15, 2025.

4.   The City agrees to pay Plaintiffs' Counsel and Plaintiffs a total of $300,000 ("Settlement Payment") in full settlement for all claims arising out of this matter, including damages, attorney's fees, and costs so that Plaintiffs' Counsel and Plaintiffs may divide the total sum of $300,000 amongst themselves consistent with their own agreements. The City will issue the Settlement Payment within 30 calendar days of receipt of the fully executed Settlement Agreement. Settlement Payment shall be made payable to Legal

   

3

Services of Greater Miami Trust Account and delivered to Legal Services of Greater Miami, Inc., Attn: Jeffrey M. Hearne, 4343 W. Flagler St., Ste. 100, Miami, FL 33134.

5. Once this Settlement is fully executed by the Parties, the Parties will file a joint motion for dismissal based upon Settlement under Rule 41. The motion will notify the Court that the City Commission must approve the Settlement and will request that the Court retain jurisdiction to: (1) vacate the dismissal if the City Commission does not approve the Settlement and (2) enforce the terms of this Agreement. However, the Parties agree that no court retains jurisdiction to enforce the current APM, the amended APM, or how the City implements the current APM or the amended APM.

6. Upon delivery of the Settlement Funds, Plaintiffs agree that the City is released from any and all liability, claim, action or demand of whatever kind or sort which any of them might have against the City and that they release the City from any and all grievances, suits, causes of action, and claims of any nature whatsoever, whether known or unknown, including but not limited to all claims asserted in this action together with and any and all charges and complaints and claims, which are based on actions, facts or occurrences prior to the time of the Settlement. It is expressly agreed and understood that this release is a *general release*.

7. This Settlement shall be binding upon the parties, their heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and shall inure to the benefit of their successors and assigns.




4


8. This Settlement may not be modified, altered or changed except upon express written consent of all Parties. This Settlement represents the complete understanding between the Parties. No other promises or agreement shall be binding or shall modify this Settlement unless signed by both Parties. This Settlement is made in the State of Florida and shall be interpreted under the laws of the State of Florida. Its language shall be construed as a whole, according to its fair meaning and not strictly for or against either party.

9. This Settlement may be executed in counterparts with each copy being deemed an original. A facsimile or electronic signature on this Settlement will be deemed to be equivalent to an original signature.

10. In the event that any provision of this Settlement is found to be void or unenforceable by a court of competent jurisdiction, the remaining provisions, in whole or in part, shall continue to be enforceable to the greatest extent allowed by law and to the same extent as if the void or unenforceable provision were omitted from the Settlement.

11. If any dispute or disagreement arises between any of the Parties concerning the obligations in the Settlement, the Parties agree to proceed as follows:

  a. The Party, through their counsel, shall notify in writing the other Party, through their counsel, immediately upon believing a dispute or disagreement has arisen.

  b. Within 7 business days after the date of the written notice, the Parties shall meet and confer regarding the dispute or disagreement, exchange documents relevant to the dispute or disagreement, and exercise good faith and best efforts to resolve the dispute





or disagreement;

c. If the dispute or disagreement cannot be resolved, either Party may file a motion before the Court seeking to enforce the terms of the Settlement. However, since no court will retain jurisdiction over the City's implementation of the APM or the amended APM, Plaintiffs cannot file a motion to enforce the Settlement related to how the City implements the APM or to any alleged violation of the APM.

PLAINTIFFS

_____    2-22-24
Latyola Cooper-Levy              Date

_____    2-20-2024
Sherman Rivers                   Date

_____    2-20-24
Philip Sylverin                  Date

_____    2/21/24
Joseph Simmons                   Date

_____    2-21-24
Audrey Delricho                  Date
Next Friend to Joseph Simmons

DEFENDANT

_____    2/28/24
City of Miami Designee           Date

6

SUBJECT:   ADMINISTRATIVE POLICY TREATMENT OF HOMELESS PERSONS' PROPERTY

Purpose:   The purpose of this policy is to establish a standard practice for the handling, temporary storage, and disposition of property belonging to homeless persons.

Scope:   This Administrative Policy shall apply to all City employees who in any way interact with homeless persons, whether probationary, classified, unclassified, executive, temporary, or part-time, except employees of the Miami Police Department shall be bound by and follow the procedures set forth in Departmental Order 11 Chapter 10, or any existing Departmental Order addressing the treatment of homeless persons' property, to the extent there is any conflict between this Administrative Policy and any Departmental Order.

Definitions:   A. "Dangerous Items" are those items that present an immediate risk to the health and safety of City Personnel or the public. These items include, but are not limited to, hazardous materials, flammable materials (e.g., propane tanks), fabric contaminated with human or animal feces or blood, or fabric contaminated with flammable substances (e.g., oil or petroleum products).

B. "Contaminated Items" are those items that could be a potential risk to City Personnel or the public, but do not require immediate disposal. These items include fabric with mold or urine that is detectable by sight or odor.

C. "Homeless Person" shall mean a person who lacks a fixed, regular, and adequate night-time residence and has a primary night-time residency that is: (a) supervised publicly or privately operated shelter designed to provide temporary living accommodations; (b) an institution that provides a temporary residence for individuals intended to be institutionalized; or ( c) a public or private place not designed for, or ordinarily used as, a regular sleeping accommodation for human beings. The term "homeless person" does not include any person imprisoned or otherwise detained pursuant to an Act of Congress or a state law. 42 U.S.C. §11301, et seq. (1994).

D. "Homeless Person's Property" or "Homeless Property" shall mean personal property known to belong to a homeless person, or readily recognizable as property of a homeless person (i.e., bedding or clothing and other belongings organized or packaged together in a way indicating it has not been abandoned).

EXHIBIT A

  E. "Durable Medical Equipment" shall mean equipment customarily used for medical purposes, able to withstand repeated use, and generally not useful to a person in the absence of disability, illness, or injury. Non-exclusive examples of such equipment include wheelchairs, walkers, canes, crutches, and portable oxygen tanks.

  F. "Abandoned", or "Abandoned Property" means items that:

(1) do not have an identifiable owner on site, **and**

(2) that City personnel can reasonably conclude that:

  (a) the items were discarded or dumped at the site,

  (b) the items have no apparent intrinsic value to a potential owner,

  (c) the items have been kept in a wrecked or dismantled condition,

  (d) the items are associated with a person who is unlikely to return to the site due to information gathered during a cleanup (e.g., incarceration, no longer homeless, etc.), or

  (e) items with a Notice of Removal which remain in the same location and have been unclaimed or unmoved. Items with a Notice of Removal which remain in the same location and have been unclaimed or unmoved will be deemed to be abandoned property and do not constitute Homeless Property.

I. General procedures:

  1. City Personnel will attempt to secure personal items such as identification, medicines and eyeglasses and other small items of importance identified by the Homeless Person or readily identifiable as personal property.

  2. Notwithstanding anything herein:

a. Homeless Property that is Dangerous may be disposed of without regard to the Notice of Removal requirement in Section IV.3.

b. City Personnel is not required to sort through and secure personal property when it is comingled with Dangerous Items and presents a significant health hazard to City Personnel.

      c. The City is not responsible for taking custody of mattresses, upholstered furniture, or other bulky items on public property, and may dispose of those items. Bulky items do **not** include tents, bicycles, or durable medical equipment. Bulky items which are Homeless Property may be disposed of by the City if deemed contaminated or abandoned and after the City complies with the Notice of Removal requirement in Section IV.3.

      d. Nothing herein prevents the disposal of items reasonably believed to be refuse or trash.

      e. The City may prohibit the presence of unattended property in specified areas where the presence of such unattended property poses a threat or risk to the public health or safety.

II.    Owner Tagged/Labeled Homeless Persons' Property:

      1. In order to aid the City in its ability to readily identify and handle the property of homeless persons, the City requires that all homeless persons who wish to identify their personal property place a tag or label with their name and contact information (telephone and/or email) on the outside of any such property, such that City employees can easily identify the property as belonging to a specific individual and will have a means of contacting that individual with regard to any actions taken as to that property.

      2. Whenever City Personnel encounter unattended but owner tagged/labeled homeless persons' property, the City Personnel will follow the procedures in Section VI of the APM. In addition:

            A. Following the storage or removal of owner tagged or labeled property, the City Personnel will attempt to contact the homeless individual identified on that tag/label to inform them of the storage or removal of their property and, if stored, the method through which the homeless person can claim that property. Three (3) attempts at contact will be made. The City shall document any such attempts. In addition, a written Notice of Collection (described in Section VI, 6.) will be left at the location where the homeless property was collected.

III.    When a Homeless Person accepts voluntary placement in shelter:

1. When a Homeless Person accepts placement in a shelter, City personnel will request the Homeless Person to secure the personal items that they wish to take to shelter with them. These items should include, at a minimum, any identification, medication, eyeglasses, and small electronics (e.g., cellphone, tablet, etc.) in the homeless person's possession. When a Homeless Person accepts shelter placement, City personnel will inform the Homeless Person about the opportunity for the City to store non-contaminated and non-bulky items.

2. When a Homeless Person accepts shelter placement, City Personnel will inform the Homeless Person that anything left behind that is deemed dangerous or contaminated or that the Homeless Person does not want will be disposed of. When a homeless person voluntarily agrees to the disposal of their property, they will be asked to sign a Waiver for Voluntary Disposal of Property Form. These forms will be maintained by the City in a searchable format by date, location, and name.

3. Any remaining Homeless Property that cannot be taken to the shelter, which the owner wants stored and is not dangerous or contaminated, will be documented, photographed, secured, and stored by City personnel. The Homeless Person who has accepted shelter will be required to sign an Inventory Storage Form, and a copy of that form will be provided to the Homeless Person. Any such stored property will be held for a period of ninety (90) days, after which the City will dispose of the property if unclaimed.

4. City personnel must photograph Homeless Property prior to taking action to store or dispose of Homeless Property. The Department of Human Services will retain the photographs from a cleanup in a manner which is searchable by cleanup date and location.

IV. Cleanup operations:

1. All Cleanup operations will be coordinated by the Department of Human Services.

2. City personnel will place notices of cleanup operation, at least seventy-two (72) hours prior to the cleaning date. Notices must be placed in a conspicuous manner within the area that is being scheduled for an upcoming cleanup. Notices must be in English, Spanish, and Haitian Creole.  The notice must:

    a. State the date and approximate time of the cleanup operation;

    b. State that unattended property may be removed and stored;

    c.  State that dangerous, contaminated, or abandoned property will be removed and the City will dispose of it;

    d. Provide a City phone number and email address people can use to recover potentially collected items;

    e. Provide the address of the Department of Human Services; and

    f. Instruct people to include tags with names and contact information on all property.

3. City personnel will attach a Notice of Removal on all tents, bicycles, suitcases, durable medical equipment, backpacks, and bags containing property such as clothes and bedding, they believe to be contaminated or abandoned.  The Notice of Removal must contain the following:

    a. Explain that the City intends to dispose of the Property for being abandoned or contaminated;

    b. The date and time by which the property must be removed (but it cannot be less than 72 hours from when the City posts the notice);

    c. Explain that the City will dispose of the Property if it is not removed; and

    d. The date and time the notice was posted.

4. City personnel must photograph the notices posted prior to a Cleanup operation. The Department of Human Services will retain

    the photographs from a cleanup in a manner which is searchable by cleanup date and location.

V.    Cleanup operation when the Homeless Person is present:

    1. City Personnel will inform the Homeless Person that the Cleanup is about to commence and request that they relocate themselves with their Homeless Property. These items should include, at a minimum, any identification, medication, eyeglasses, and electronics in the homeless person's possession. City Personnel will inform the Homeless Person that the City provides storage for non-contaminated and non-bulky Homeless Persons' Property.

    2. City personnel will request that the Homeless Person identify any of their Homeless Property that they are willing to voluntarily discard. When a homeless person voluntarily agrees to discard property, they will be asked to sign a Waiver for Voluntary Disposal of Property Form.

    3. Any Homeless Property which is not dangerous or contaminated or does not otherwise pose a health hazard or obvious safety issue and the owner wants stored, will be documented, photographed, secured, and stored by City personnel. The Homeless Person will be required to sign an Inventory Storage Form, and a copy of that form will be provided to the Homeless Person. Any such stored property will be held for a period of ninety (90) days, after which the City will dispose of the property if unclaimed.

VI.    Cleanup operation when the Homeless Person is not present:

    1. Any personal items such as identification, medicines and eyeglasses and other small items of importance readily identifiable as intimate personal property may be collected and held for a period of ninety (90) days, after which the City will dispose of the property if unclaimed. An Inventory Storage Form will be completed, and City Personnel will post a Notice of Collection as required in Section VI. 6. If these items are not collected and stored, City Personnel will leave the items at the cleanup location.

2. Any unattended Homeless Property that is not dangerous or contaminated, such as identification, tents, clothing, bedding, bicycles, durable medical equipment, photographs, personal papers, and keepsakes, may be collected by City personnel for storage. If collected, it will be held for a period of ninety (90) days, after which the City will dispose of the property if unclaimed. An Inventory Storage Form will be completed by City personnel if collected. If these items are not collected and stored, they will be left at the cleanup location.

3. Any items that are dangerous, contaminated, abandoned, or is an obstruction to the public right of way such that it acts as an obstacle to the entire public right of way will be disposed of according to this policy. However, City personnel cannot dispose of abandoned or contaminated property that did not receive a Notice of Removal attached to it as required by Section IV. 3

4. When personal items are comingled with other contaminated homeless property and when it can be done safely, City personnel will attempt to identify personal items which can be stored pursuant to this policy.

5. If homeless property is tagged/labeled by its owner, the City will follow the procedures set forth in section II, above.

6. When City personnel store any unattended Homeless Property, they will post a written Notice of Collection at the location of the unattended property which provides:

> a. A general description of the property to be removed (such description may refer to an attached photograph of the items or site in question or listing of some of the items contained in a bag);
>
> b. A City phone number and email address the owner can use to recover their property;
>
> c. The address of the Department of Human Services;
>
> d. Notice that the property must be claimed from the City within 90 days or the City may destroy or dispose of the property; and

> e. The date the notice of collection was posted and the name of the City personnel posting the notice of collection.

> 7. City Personnel will photograph any Notices of Collection posted, and the Department of Human Services will retain the photographs in a manner which is searchable by cleanup date and location.

VII.     Procedures for unattended and unidentified (untagged/unlabeled) Homeless Property outside of a Cleanup Operation:

> 1. The Department of Human Service shall be contacted prior to City personnel taking action with respect to Homeless Property.

> 2. Any personal items such as identification, medicines and eyeglasses and other small items of importance readily identifiable as intimate personal property may be collected and held for a period of ninety (90) days, after which the City will dispose of the property if unclaimed. An Inventory Storage Form will be completed by City personnel and City Personnel will post a Notice of Collection as described in Section VI. 6. If these items are not collected and stored, City Personnel will leave the items at the location.

> 3. City personnel will attach a Notice of Removal on all tents, bicycles, suitcases, durable medical equipment, backpacks, and bags containing property such as clothes and bedding they believe to be contaminated or abandoned. The Notice of Removal must contain the requirements listed in Section IV. 3.

> 4. Any unattended Homeless Property that is not dangerous or contaminated, such as identification, tents, clothing bedding, bicycles, durable medical equipment, photographs, personal papers, and keepsakes, , may be collected by City personnel for storage. If collected, it will be held for a period of ninety (90) days, after which the City will dispose of the property if unclaimed. An Inventory Storage Form will be completed and posted by City personnel. If these items are not collected and stored, they will be left at their location.

> 5. Any items that are dangerous, contaminated, or abandoned, will be disposed of according to this policy. However, City personnel cannot dispose of abandoned or contaminated property that did not

receive a Notice of Removal attached to it as required by Section IV. 3.

6. When personal items are comingled with other dangerous or contaminated homeless property and when it can be done safely, City Personnel will attempt to identify personal items which can be stored pursuant to this policy.

6. If homeless property is tagged/labeled by its owner, the City will follow the procedures set forth in section II, above.

7. When City personnel store any unattended Homeless Property, they will post a written Notice of Collection at the location of the unattended property which provides:

>a. A general description of the property to be removed (such description may refer to an attached photograph or a list of some of the items within a bag);
>
>b. A City phone number and email address the owner can use to recover their property;
>
>c. The address of the Department of Human Services;
>
>d. Notice that the property must be claimed from the City within 90 days or the City may destroy or dispose of the property; and
>
>e. The date the notice of collection was posted and the name of the City Personnel posting the Notice of Collection.

8. City Personnel will photograph any Notices of Collection posted, and the Department of Human Services will retain the photographs in a manner which is searchable by cleanup date and location.

VIII. Storage Procedures

1. The City homeless property storage site will be accessible by public transit or other means accessible to persons with low income.

2. When Homeless Property is collected by City personnel it must be photographed and catalogued with a general description of the property, the date of its removal, the location from which it was removed, and the name of City personnel who stored the item. This

information must be kept by the Department of Human Services in a searchable manner which allows the property owner to reclaim it. Bags may be used to keep items collected from the same sites together. Notices of such collection need only list a general description of the items that have been collected, not all.